

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 6, 2012

**Via Email**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, New York 10007

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9|21|2012
```

### Re: United States v. Todd Newman, et al., S2 12 Cr. 121 (RJS)

Dear Judge Sullivan:

Pursuant to the Court's Order dated August 30, 2012, the Government hereby responds to the August 30, 2012 letter submitted by counsel for Jon Horvath addressing the Government's Bill of Particulars and the scope and timing of the trial in this case. For the reasons set forth below, the Government submits that its final Bill of Particulars, like the prior two it had provided to the defendants on May 14, 2012 and July 31, 2012, is sufficiently particularized, and the defendants' request for an adjournment should be denied. Further, to the extent Horvath's letter suggests there is confusion as to the scope of the Government's proof at trial, the Government herein provides additional details about the nature of that proof.

### I. The Nature Of This Insider Trading Trial

The trial in this case will focus predominantly on insider trading around earnings announcements for two stocks: Dell, Inc. ("Dell") and NVIDIA Corporation ("NVIDIA"). Indeed, the 11 substantive counts in the Superseding Indictment ("Indictment") allege trading only in these two stocks. The evidence relating to the passing of, and trading on, material, nonpublic information ("Inside Information") relating to these two stocks will also be relevant to the conspiracy charged in Count One. That count alleges that a group of analysts at different hedge funds, referred to as "Analyst Coconspirators" in the Indictment – which includes defendant Jon Horvath – exchanged Inside Information with each other, and provided that information to their respective portfolio managers, including defendants Todd Newman and Anthony Chiasson.

The evidence with respect to the 11 stocks identified in the Bill of Particulars *other* than Dell and NVIDIA will also be direct evidence of the charged conspiracy. Such evidence will

The Honorable Richard J. Sullivan
September 6, 2012
Page 2

show, among other things, the relationship among the coconspirators, how the conspirators trafficked in Inside Information, including how the analysts shared Inside Information, how they obtained it directly or indirectly from their sources, and how they provided it to their portfolio managers. More generally, as relevant to all counts, the evidence as to the other 11 stocks will also show the knowledge of the portfolio managers as to the sources and illegal nature of the Inside Information provided to them by their analysts. To be clear, however, and as described further below, the Government expects that the evidence relating to these 11 stocks will consume a considerably smaller portion of the Government's case in chief.

More specifically with respect to Dell, the Government expects the evidence at trial to show that a Dell employee – referred to as the "Dell Insider" in the Complaint and Indictment – provided Inside Information to Sandeep Goyal ("Goyal") for approximately seven consecutive quarters from either late 2007 or early 2008 through approximately August 2009. Goyal provided the information to Jesse Tortora ("Tortora"), who, in turn, passed it to his portfolio manager, Todd Newman. In addition, beginning either in or about February 2008 or in or about April/May 2008, Tortora provided the information to certain of the Analyst Coconspirators, including Horvath, who provided the information to their respective portfolio managers.

With respect to NVIDIA, the Government expects the evidence to show that an employee of NVIDIA – referred to as the "NVIDIA Insider" in the Indictment – provided Inside Information to Hyung Lim, who in turn provided the information to Danny Kuo, for several consecutive quarters from in or about late 2008 or early 2009, through 2009. Kuo passed the information to a portfolio manager at his investment firm, as well as to Horvath, Tortora and Sam Adondakis ("Adondakis"). Horvath, Tortora, and Adondakis, in turn, provided the information to their respective portfolio managers.

Based on the foregoing evidence, the Indictment charges the defendants with substantive counts for trading on Inside Information in advance of Dell's May 29, 2008 and August 28, 2008 quarterly earnings announcements, and in advance of NVIDIA's May 7, 2009 quarterly earnings announcement. The Bill of Particulars alleges insider trading in Dell securities for three additional quarters. Those precise quarters are specified in the Bill of Particulars.

In contrast to the evidence with respect to Dell and NVIDIA, the evidence as to the 11 other stocks in the Bill of Particulars will be more limited. For example, while the Government intends to call as witnesses representatives from Dell and NVIDIA, the Government presently does not intend to call corporate witnesses for most of the remaining 11 stocks.[1] Indeed, with

---

[1] The Government may call corporate representatives from the other 11 companies if necessary to respond to arguments made by the defendants during cross-examination of the Government's witnesses or in the defense case, but does not anticipate having to do so. The Government will also seek to introduce by way of stipulation (or relevant custodian should defendants decline to stipulate) personnel files of the sources of the Inside Information, to the extent they are known to the Government, and other business records such as the compliance policies which prohibited the disclosure of confidential information.

The Honorable Richard J. Sullivan
September 6, 2012
Page 3

respect to some of the stocks, as discussed in more detail below, the Government is not aware of the identity of the company insider who disclosed the information. Moreover, for most of the 11 stocks other than Dell and NVIDIA, the Government does not presently intend to call as witnesses the sources of the information or the intermediaries who passed the information from the sources to the Analyst Coconspirators. Additionally, while there will be considerable testimony from a summary witness (such as an FBI agent) regarding trading in Dell and NVIDIA securities, the Government expects to introduce only limited evidence about trading activity in other stocks. Of course, in order to prove an insider trading conspiracy, it is not necessary for the Government to prove any specific trades or that the defendants actually succeeded in obtaining inside information, rather the Government must show that the defendants entered into the unlawful agreement charged in the Indictment. *See United States* v. *Shellef*, 507 F.3d 82, 105 (2d Cir. 2007) ("'[T]he illegality of [a conspiracy] does not depend upon the achievement of its goal' and it therefore 'does not matter that the ends of the conspiracy were from the beginning unattainable.'") (quoting *United States* v. *Giordano*, 693 F.2d 245, 249 (2d Cir. 1982)).

## II. The Government's Bill Of Particulars Is Not Substantially Broader Than Previously Represented And Is Sufficiently Specific

### A. The Government Has Not Unexpectedly Broadened Its Case

Horvath contends that the Government has substantially broadened its case in its final Bill of Particulars, filed August 29, 2012, in three ways: (1) by identifying additional coconspirators, (2) by identifying additional quarters with respect to Dell insider trades, and (3) by identifying an additional six stocks as to which one or more of the defendants obtained or received Inside Information or attempted to do so. Horvath's contention is meritless.

1.  Additional Coconspirators

With respect to the number of coconspirators, in its July 31, 2012 Bill of Particulars, the Government identified 12 coconspirators, including the defendants. In its August 29, 2012 Bill of Particulars, the Government added four additional coconspirators: specifically, ▌ ▌ (the portfolio manager to whom Jon Horvath reported at his hedge fund), ▌ ▌), and two individuals whose names the Government had previously disclosed in its July 31, 2012 Bill of Particulars, namely, ▌. Although they were not specifically labeled as coconspirators, ▌ and ▌ had previously been identified in the Government's July 31, 2012 Bill of Particulars as individuals who acted as conduits of Inside Information pertaining to Intel. In short, the addition of these four names did not substantially broaden the Government's case; nor were these individuals unknown to the defendants at the time they were named as coconspirators.



The Honorable Richard J. Sullivan
September 6, 2012
Page 4

    2.      Additional Quarters For Dell Trading

The defendants assert that the Government has unexpectedly expanded the number of quarters in which the defendants traded on Dell Inside Information from two to five. In fact, the Government had previously stated in prior Bills of Particulars and in argument to the Court that it would identify additional quarters where the defendants traded on Inside Information in advance of the quarterly announcements. *See* June 28, 2012 Tr. at 81-82 ("[T]he comment at the end of the bill of particulars that there may be additional trades for Dell in different quarters, we're going to provide that; we're just not in a position to provide that today. That will be in the bill of particulars."). Consistent with these representations, in its August 29, 2012 Bill of Particulars, the Government identified two additional quarters for Horvath and Chiasson, and three additional quarters for Newman (with the trade for one of those quarters taking place on a single day).

    3.      The Number Of Stocks Identified

Finally, with respect to the number of stocks identified, the Government's final Bill of Particulars is consistent with prior representations to the Court and the defendants. Specifically, following the Government's April 9, 2012 letter to the defendants, in which it identified 35 stocks about which one or more of the cooperating witnesses or coconspirators obtained or attempted to obtain confidential information, directly or indirectly, from a source inside the company, the Government expressly informed the Court that it would limit the number of stocks at trial to between 12 and 15.[2] In its final Bill of Particulars, the Government identified 13 stocks, including Dell and NVIDIA, all but one of which was included on the list of 35 stocks in the Government's April 9, 2012 letter.[3]

---

[2]    The Government attempted to obtain agreement from defendants that they, too, would not elicit testimony about other stocks in cross-examination of the Government's witnesses. The defendants refused to be so limited. Accordingly, the Government notified the defendants of its intent to offer evidence about other stocks not identified in its Bill of Particulars either in redirect or by way of rebuttal to respond to arguments made by the defendants in their case or during their cross-examination of the Government's witnesses. *See* June 28, 2012 Transcript at 9.

[3]    Horvath notes that the Government did not list TE Connectivity in its list of 35 stocks in its April 9, 2012 letter to defendants. However, the Government only recently found relevant evidence relating to TE Connectivity, namely, instant messages and emails between Sam Adondakis and Anthony Chiasson about the stock. *See infra*.

The Honorable Richard J. Sullivan
September 6, 2012
Page 5

### B. The Government's Bill Of Particulars Is Sufficiently Specific

The Government's August 29, 2012 Bill of Particulars provides significant detail as to the various stocks listed therein, including descriptions of the nature of the information, the timing of when the information was passed or obtained, the source of the information and benefit to the source, if known, and certain information about trades in six stocks. Moreover, the three Bills of Particulars provided to the defendants, including the August 29, 2012 Bill of Particulars, supplement an already comprehensive Complaint and detailed Indictment. Further, the Government will be providing exhibits and Section 3500 materials to the defendants on September 21, 2012, a full five weeks before the start of trial. Accordingly, and for the reasons set forth below, the Government's Bill of Particulars has both complied with the Court's requirements and Second Circuit law. *See, e.g., United States v. Cephas*, 937 F.2d 816, 834 (2d Cir. 1991) (the Government is not required to "particularize all of its evidence"); *United States v. Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) ("'[T]he Government is not required to provide information that would, in effect, give the defendant a preview of the Government's case before trial.'") (citations omitted); *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). ( "[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.").

The defendants contend that the Bill of Particulars inadequately specifies: (1) the dates on which the Inside Information was passed, referring to the Government's statements as to Dell, NVIDIA, Volterra, and Sun; (2) information about TE Connectivity; (3) the sources of the information for Volterra, PMC Sierra, or Ingram Micro, and any personal benefit; and (4) dates of trading in Sun, Intel, Texas Instruments, and TSMC. However, the Government has provided the level of specificity required by the Court and the law.[4]

#### 1. Time Periods For The Passing Of Inside Information

At the June 28, 2012 conference, the Court instructed the Government to identify the quarters during which the alleged Inside Information was passed. *See* June 28, 2012 Tr. at 88. The Government has complied with this directive.

With respect to Dell, the Government disclosed that the Dell Insider provided earnings information, including revenues and margins, for approximately seven consecutive quarters from

---

[4] The defendants also claim generally that the Government has provided an inadequate description of the nature of the information obtained or provided by the Analyst Coconspirators, without making specific challenges, except as discussed below. However, in another case, the Government provided very similar descriptions of Inside Information, including of some of the same sources, and the district court there ruled that the Government's disclosures were sufficient. *See United States v. Fleishman*, 11 Cr. 32 (JSR).

The Honorable Richard J. Sullivan
September 6, 2012
Page 6

in or about late 2007 through August 2009. Moreover, as is clear from the Complaint, which describes telephone records and emails that will be exhibits at trial, the Dell Insider typically provided that information on multiple occasions within each quarter. Given the recollection of witnesses, the Government is unable to pinpoint with any greater specificity precisely when Goyal started receiving Inside Information from the Dell Insider – whether the last quarter in 2007 or the first quarter in 2008.

With respect to NVIDIA, the Bill of Particulars states that the NVIDIA Insider provided Inside Information concerning NVIDIA's earnings from "in or about *late* 2008 through in or about 2009." Both the Complaint and the Indictment set forth specific emails for three quarters in 2009 – in advance of the February, May and August earnings reports – that contain the NVIDIA Inside Information. Cooperating witness testimony, however, will indicate that Hyung Lim obtained or attempted to obtain financial information about NVIDIA's performance from the NVIDIA Insider beginning in late 2008, and that he continued to obtain such information on multiple occasions through 2009 (and later, although for purposes of the conspiracy, only the period through 2009 is relevant).

With respect to certain of the 11 stocks, such as Volterra and Sun, for which Horvath complains that insufficient particulars have been provided, the Government has provided the level of specificity that it is able to provide based on the evidence. Thus, as noted above, Tortora received confidential information pertaining to Volterra revenues on a number of occasions from ▆▆▆▆▆▆▆▆, but Tortora is uncertain as to the precise period during which the information was provided. Similarly, with respect to Sun, Tortora recalls Horvath providing to him information pertaining to Sun's earnings that came from an employee at Sun for a number of quarters beginning in or about the latter part of 2007 and ending in or about May 2008, but the anticipated testimony does not allow the Government to present a more specific time frame.[5]

In short, the Government's Bill of Particulars provides sufficient notice of the periods of time during which the information was passed.

    (2)    <u>TE Connectivity</u>

The Government identified TE Connectivity as a stock about which one or more of the coconspirators obtained or attempted to obtain Inside Information. The Government presently intends to elicit testimony from Adondakis about communications he had with Chiasson concerning that stock. Thus, in one instant message exchange in March 2008, Adondakis informed Chiasson that he did not have a "mole in the organization [referring to TE

---

[5]      Defendants point out that the Bill of Particulars did not provide any information as to the dates that the Sun insider provided Inside Information to Horvath. The Government inadvertently omitted that information from its Bill of Particulars, but provided it to the defendants by letter yesterday.

The Honorable Richard J. Sullivan
September 6, 2012
Page 7

Connectivity] yet" and that he was still working on getting a "killer contact" there. The Government does not anticipate eliciting that Adondakis in fact succeeded in obtaining Inside Information from a TE Connectivity employee, and, accordingly, the Government did not identify the nature of any information passed or obtained or any benefit to any source inside TE Connectivity. Nonetheless, this evidence is clearly probative of Chiasson's awareness of how Adondakis obtained Inside Information for Chiasson to trade on.

(3)   Sources For Volterra, PMC Sierra, And Ingram Micro

The defendants complain that the Government did not identify the source of the information, and benefit to the source, with respect to three stocks: Volterra, PMC Sierra, and Ingram Micro. However, the Government has not disclosed the identities of the original company insiders who disclosed the information because the Government does not know their identities. If the Government learns their identities, we will provide that information to the defendants promptly.

(4)   Trades

At the June 28, 2012 conference, the Court stated:

> I think the information and the timing of the information needs to be disclosed. And from that, I think everything else should follow. ***I don't think they have to say what trades were made as a result of that information.***

June 28, 2012 Tr. at 84 (emphasis added). Consistent with this directive, the Government provided the time periods during which the defendants obtained or attempted to obtain Inside Information, and the nature of the information. In addition, although not required by the Court to do so, the Government also identified specific trades in Dell and NVIDIA. Further, the Government agreed to limit its proof of additional trading in its case in chief to just four other stocks.[6]

---

[6]   In prior Bills of Particulars the Government identified specific trades by Level Global in TSMC and Intel.

The Honorable Richard J. Sullivan
September 6, 2012
Page 8

### III. Defendants' Request for An Adjournment

The Government's final Bill of Particulars is consistent with its prior representations about the scope of this trial and fully complies with the directives and schedule set by the Court. Accordingly, the Government does not believe that the defendants have provided a sufficient basis to warrant an adjournment of the trial. Further, as previously stated, the Government expects that its case in chief will last approximately four weeks.

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By: *Antonia Apps*

Antonia M. Apps
Richard C. Tarlowe
John T. Zach
Assistant United States Attorneys
(212) 637-2198/2330/2410

cc: Steven R. Peikin, Esq., Karen Seymour, Esq. and Guy Petrillo, Esq. (Counsel for Jon Horvath)
Stephen Fishbein, Esq. and John A. Nathanson, Esq. (Counsel for Todd Newman)
Reid H. Weingarten, Esq. and Gregory Morvillo, Esq. (Counsel for Anthony Chiasson)