UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                            :

UNITED STATES OF AMERICA,         :

        - v. -                                :

TODD NEWMAN, and               :     No. 12-CR-00121 (RJS)
ANTHONY CHIASSON,            :

                                                            :

               Defendants.             :
------------------------------------------------------------ x


**DEFENDANT TODD NEWMAN'S OPPOSITION TO THE GOVERNMENT'S
MOTION TO PRECLUDE CERTAIN AUDIO RECORDINGS**


                                                         Stephen Fishbein
                                                         John A. Nathanson
                                                         Sara A. Ricciardi
                                                          Shearman & Sterling LLP
                                                         599 Lexington Avenue
                                                         New York, NY 10022-6069
                                                         Tel: 212-848-4000

                                                         *Attorneys for Defendant Todd Newman*

Defendant Todd Newman respectfully submits this opposition to the government's motion to preclude certain audio recordings filed on October 22, 2012.[1]

## BACKGROUND

The government's case against Mr. Newman is based principally on the testimony of Jesse Tortora, an analyst at Diamondback who worked with Mr. Newman. According to the government's Bill of Particulars, Mr. Tortora was the sole conduit through which allegedly improper information went to Mr. Newman. Accordingly, Mr. Tortora's credibility will be one of the critical issues in the case.

The December 1, 2010 recording between Mr. Tortora and another co-conspirator, Danny Kuo, contains statements by Mr. Tortora that he intends to blame Mr. Newman for anything he has done wrong and that he bears animosity towards Mr. Newman. Among other things:

- Mr. Tortora states that, "my only saving grace was that they [Diamondback] want me to help them with the investigation on Todd." (Gov't. Mot. Ex. A, p. 3 ¶36.)

- Mr. Tortora states, "like I said, my only saving grace would have been that Diamondback tries to rope me in and make Todd and others at his level the scapegoat . . . ." (*Id.* at p. 10 ¶166.)

- Mr. Kuo tells Mr. Tortora, "[t]he best thing to do, for you, right now is to push every responsibility up to Todd," to which Mr. Tortora responds, "Right." Mr. Kuo continues that Mr. Tortora should "say that's what [Newman] told you to do. Right? . . . that is the methodology that he told you to do, and that is the best way to go." Mr. Tortora responds, "Yeah. Yeah. Yeah." (*Id.* at p. 8 ¶¶127-30.)

- Mr. Kuo says, "they can pin Todd, and not you, right? I mean, I don't know how close you are to Todd, but . . . " at which point Mr. Tortora interrupts to say that he is not close to Mr. Newman, that they had a "screaming match" and that "I told [Newman] he doesn't wanna run into me at, uh, conferences." (*Id.* at p. 18 ¶¶280-83.)

---

[1] The government has had the defendants' exhibit list – which includes the relevant audio recordings – since October 3, 2012, yet filed its *in limine* motion literally on the eve of the scheduled pretrial conference.

- Mr. Kuo says, "I'm not trying to say you should throw Todd under the bus, or whatever, obviously you want to remain there's some allegiance, or whatever, right?" Mr. Tortora responds, "No, well, no, no, no . . . what I'm . . . saying is, like, there's really not." (*Id.* at p. 18 ¶¶284-87.)

## ARGUMENT

### I. Mr. Tortora's Statements Are Admissible as Non-Hearsay Evidence of His Bias and Animosity Towards Mr. Newman

A clearer statement of a key witness' bias and animosity against the defendant is hard to imagine. Mr. Tortora volunteers that he considers it a good thing that Mr. Newman can be made the "scapegoat" in the investigation. He agrees with Mr. Kuo's suggestion to "push every responsibility" up to Mr. Newman. When Mr. Kuo asks in this context whether Mr. Tortora is "close" to Mr. Newman, Mr. Tortora's jumps in to say he is not, and to offer details such as a screaming match they had and a threat that Mr. Tortora made to Mr. Newman. As such, these statements are evidence of intent and state of mind that Mr. Newman has a right to introduce to impeach the key witness against him.[2]

Any suggestion that the statements constitute inadmissible hearsay should be rejected. As the Second Circuit has recently explained, to the extent statements are offered as relevant to state of mind, they are not hearsay. *See United States v. Cain*, 671 F.3d 271, 300 (2d Cir. 2012);

---

[2] "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984). This applies with particular force in a criminal case, where denying a defendant the opportunity to impeach a witness encroaches upon the Confrontation Clause. *See Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008) ("It is a clearly established principle of Supreme Court jurisprudence that the Confrontation Clause requires that a criminal defendant be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony."); *see United States v. Figueroa*, 548 F.3d 222, 230 (2d Cir. 2008); *United States v. Smith,* 308 F.3d 726, 738 (7th Cir. 2002) ("Limitations on cross examination rise to the level of a Sixth Amendment violation when they prevent the exposure of a witness's bias and motivation to lie.").

*see also United States v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011) (rejecting hearsay objection and holding that extrinsic evidence of a witness' bias "is admissible to impeach that witness and is never a collateral issue").

In *Cain*, the defendants were charged with fraud and arson, and challenged the admission of testimony from a tenant to the effect that shortly before the fire, he had an argument with the mother of one of the defendants (who the indictment charged had been complicit in her son's fraud) in which she said that she would rather burn the house than let the tenant have it. The Court held that "[t]o the extent that the statements were offered as relevant to [the mother's] state of mind, they were not hearsay at all." *Cain*, 671 F.3d at 300. As the Court explained, the statements had evidentiary weight "because they expressed anger at [the tenant], demonstrated consciousness on the part of [the mother] of the possibility of burning the house, and indeed could be taken as implied threats to do just that." *Id*.

Here, Mr. Tortora's statements agreeing with Mr. Kuo's advice to blame Mr. Newman, and expressing hostility to Mr. Newman reflect Mr. Tortora's state of mind – namely that he is biased against Mr. Newman. As such, they are admissible as non-hearsay.[3]

---

[3] For similar reasons, the defense may use the statements to impeach Mr. Tortora if he denies making such statements on the stand. In this context, the defense would seek to play portions of the recording as prior inconsistent statements of the witnesses. *See* Fed. R. Evid. 801(d); *see also United States v. Bliss*, 188 F. App'x 13, 16 (2d Cir. 2006) (noting that pursuant to Federal Rule of Evidence 801(d)(1)(A), prior inconsistent statements are admissible as non-hearsay). Moreover, the defense may offer the statements as extrinsic evidence of prior inconsistent statements pursuant to Federal Rule of Evidence 613(b). *See United States v. Demosthene*, 334 F. Supp. 2d 378, 382 (S.D.N.Y. 2004) (Rule 613(b) would permit defendant to use tape recording of conversation between defendant's wife and cooperating witness to impeach the cooperating witness "if [he] denies having made the statements he made in the taped recording or directly contradicts statements made therein").

## II.  The Statements Are Also Admissible Under the State of Mind Exception to the Hearsay Rule

The statements are also admissible under the state of mind exception to the hearsay rule. *See* Fed. R. Evid. 803(3). Statements to the effect that Mr. Tortora is hostile to Mr. Newman and has no allegiance to him clearly reflect state of mind admissible under the Rule. *See Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (Fed. R. Evid. 803(3) properly invoked when "the statement is offered for the truth of the matter asserted *and* shows the declarant's state of mind (e.g. 'I hate X')"). Moreover, Mr. Tortora's agreement to Mr. Kuo's suggestion to push the blame onto Mr. Newman is a statement reflecting future intent that is admissible to prove subsequent conduct consistent with that intent. *See Mut. Life Ins. Co. of N.Y. v. Hillmon*, 145 U.S. 285, 295 (1892); *see also United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds. . . .  If relevant, such a statement may be introduced to prove that the declarant thereafter acted in accordance with the stated intent." (citations omitted)); *see also United States v. Persico*, 645 F.3d 85, 100 (2d Cir. 2011) (same).

## III.  Mr. Tortora's Statements Are Attributable to Him, Not the FBI

The government argues that the statements are not properly attributed to Mr. Tortora because the conversation resulted from "an undercover ruse set up by the FBI" and that Mr. Tortora's statements "primarily reflect instructions he received from the FBI . . . ." (Gov't. Br. at 2.) This argument is deeply troubling as well as incorrect.

If it is true that the FBI *instructed* Mr. Tortora to express animosity towards Mr. Newman and to agree to "push every responsibility" to Mr. Newman and make him a "scapegoat," then the government's motives for this prosecution are highly questionable and something Mr.

4

Newman is entitled to explore in its own right. Undoubtedly, what the government meant to say is that the call was set in motion by the FBI. But that is a far cry from saying that Mr. Tortora's comments about blaming and disliking Mr. Newman were not his own. Indeed, it is clear from the transcript that several of Mr. Tortora's comments are in response to Mr. Kuo bringing up the idea of blaming Mr. Newman. Mr. Tortora appears to have responded to Mr. Kuo spontaneously, and even eagerly in some cases, reflecting his true bias towards Mr. Newman and not any direction from the FBI.

## CONCLUSION

For the reasons stated herein, the government's motion to exclude the December 1, 2010 recording between Mr. Tortora and Mr. Kuo should be denied.

Dated:  New York, New York
        October 22, 2012

Respectfully submitted,

SHEARMAN & STERLING LLP

By: __/s/ Stephen Fishbein__
    Stephen Fishbein

    Stephen Fishbein
    John A. Nathanson
    Sara Ricciardi
    599 Lexington Avenue
    New York, NY 10022-6069
    Tel: 212-848-4000

    *Attorneys for Defendant Todd Newman*