UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA                         :
:
       - v. -                               :   S2 12 Cr. 121 (RJS)
:
TODD NEWMAN and                                  :
ANTHONY CHIASSON,                                :
:
               Defendants.                   :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S MOTION TO ADMIT CERTAIN EXHIBITS
# PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(E)


                                      PREET BHARARA
                                      United States Attorney for the
                                      Southern District of New York
                                      Attorney for the United States
                                            of America.


ANTONIA M. APPS
RICHARD C. TARLOWE
JOHN T. ZACH
Assistant United States Attorneys
    *- Of Counsel –*



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

December 4, 2012

**Via Email**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, New York 10007

                **Re: United States v. Todd Newman, et al., S2 12 Cr. 121 (RJS)**

Dear Judge Sullivan:

      The defendant has raised hearsay objections to two exhibits that contain electronic communications between David Ganek and Michael Alessi, namely Government Exhibits 438 and 927.  The Government respectfully submits that the documents are admissible pursuant to Federal Rule of Evidence 801(d)(2)(E).  The defendant bases the objection on the testimony of Sam Adondakis, who stated that he did not explicitly tell Mr. Ganek that the earnings information he was providing to Mr. Ganek on Dell Inc. ("Dell") and NVIDIA Corporation ("NVIDIA") came from sources inside those companies.  For the reasons set forth below, there is substantial circumstantial evidence to support the inference, based on the preponderance standard, that Mr. Ganek did in fact know that Mr. Adondakis's information came from sources inside those companies, and, accordingly, Mr. Ganek is a coconspirator for purposes of Rule 801(d)(2)(E).  Additionally, even apart from whether Mr. Ganek is a coconspirator, the statements of Mr. Alessi are admissible under Rule 801(d)(2)(E), because Mr. Adondakis did inform Mr. Alessi of the sources of the Dell and NVIDIA inside information, and, as the trader involved in executing Mr. Chiasson's trades, Mr. Alessi's statements are in furtherance of the conspiracy.

**I.     Mr. Ganek's Involvement in the Dell Trades**

      Mr. Ganek participated in email and instant message exchanges with members of the alleged conspiracy which show that Mr. Ganek knew the source of the information Mr. Adondakis was providing on Dell.  The chronology of events in advance of Dell's August 28, 2008 earnings announcement, as relevant to Mr. Ganek, is as follows:

The Honorable Richard J. Sullivan
December 4, 2012
Page 2

| | |
|---|---|
| July 28, 2008: | In an email to "Hardware," which includes Mr. Ganek, Mr. Adondakis writes: "Last check is that the top line is tracking in line to slightly better with lower GM." (GX 433).[1] |
| August 5, 2008 | Mr. Adondakis received the Dell check from Mr. Tortora, which stated that gross margins would be 17.5 %, which was lower than the market expectations of 18.3% gross margin. (GX 214). Mr. Adondakis relayed this information to Mr. Chiasson. (Tr. 1761). |
| August 8, 2008 at 2:03 p.m. | Mr. Ganek and Mr. Alessi had the following exchange in an instant message (GX 438)[2]: |
| | Mr. Ganek:    did sam here [sic] from his dell contact? |
| | Mr. Alessi:    initial check was neg earlier in the week, next one is later next week I believe (not sure of exact timing), then one more right before the q |
| August 8-11, 2008 | In response to a request by Mr. Brenner and/or Mr. Chiasson, Mr. Adondakis prepared an analysis of what will happen to the stock on the earnings announcement based on the "pending GM data" (GX 446), which Mr. Adondakis printed out and showed Mr. Chiasson and Mr. Brenner in a meeting. Mr. Adondakis then observed Mr. Chiasson and Mr. Brenner take that analysis into Mr. Ganek's office without Mr. Adondakis. (Tr. 1779). Level Global increased its short position on August 11, 2008. |

---

[1] The Government will provide the Court with a binder of the referenced exhibits in Court this morning.

[2] Government Exhibit 438 is one of the disputed emails. However, the Court may consider hearsay evidence in determining whether the Government has met its burden of showing Mr. Ganek to be a coconspirator. *See United States v. Farhane*, 634 F.3d 127, 161 (2d Cir. 2011) (holding that hearsay statements may themselves be considered in determining admissibility under Rule 801(d)(2)(E) provided there is "*some independent corroboration*" of defendant's participation in the conspiracy) (citations omitted and emphasis added); *see also United States v. Padilla*, 203 F.3d 156, 162 (2d Cir. 2000) ("Where . . . the hearsay evidence itself so convincingly implicates a defendant (in the conspiracy), a district court may require less corroboration to find by a preponderance of the evidence that the defendant participated in the conspiracy for purposes of admitting co-conspirators' statements against him.").

The Honorable Richard J. Sullivan
December 4, 2012
Page 3

| | | |
|---|---|---|
| August 15, 2008 | | Mr. Adondakis told Mr. Chiasson and Mr. Ganek that he would get "the DELL check mid-week & the company reports the following Thurs" (GX 459). |
| August 18, 2008 | | Mr. Adondakis received another update from Mr. Tortora on the Dell inside information.  Level Global increased its short position. |
| August 26, 2008 | | Mr. Chiasson sent an email to Mr. Ganek noting that a sell-side analyst on Dell predicted gross margins at 18% the day before, and that "our call is 17.5ish."  Mr. Chiasson also informed Mr. Ganek that "Fortuna" – an analyst on Dell – was "short" Dell on a gross margin miss and that Mr. Fortuna "used to have a couple of guys there."  (GX 513).  In an instant message later that day, Mr. Chiasson told Mr. Ganek the following (GX 515) (emphasis added): |

> u see the dell note I sent over
> tuna smells it
> he has generally been good on the name, has a few guys there
> ***these are not sam's people***

| | | |
|---|---|---|
| August 27, 2008 | | Mr. Aondakis had a 40 minute call with Mr. Chiason, Mr. Brenner, Mr. Ganek (and possibly Mr. Alessi) in which Mr. Adondakis said he "ha[d] another Dell update" indicating gross margins were coming in below expectations, and then Mr. Adondkais "walked through a couple of the other details form the conversation [he] had with Jesse Tortora."  (Tr. 1805; GX 523). |

In addition, Mr. Ganek participated in discussions about Dell in February 2009 shortly before Dell publicly announced its earnings announcement for that quarter.  Thus, on February 4, 2009, Mr. Adondakis informed Mr. Chiasson that he would get a "better read [on Dell] later" in the week of February 4, 2009 or early the next week. (DX 963).  On February 13, 2009, after Mr. Chiasson inquired as to whether Mr. Adondakis had further information, Mr. Adonakis informed Mr. Chiasson that he would "probably [get it] over the weekend."  (GX 577).  In an email exchange on February 17, 2009, Mr. Chiasson informed Mr. Ganek regarding the "Dell check" that: "sa [Sam Adondakis] got his check in, not much delta from current consensus thinking." (GX 578).

## II.   Mr. Ganek's Involvement in the NVIDIA Inside Information

The evidence at trial has established that on April 27, 2009, Danny Kuo, an analyst at Whittier Trust Company, passed to Mr. Adondakis, Mr. Tortora and others, information that

The Honorable Richard J. Sullivan
December 4, 2012
Page 4

NVIDIA's gross margins for the "April quarter" would be "tracking to 30% based on current product mix." (GX 813.)  Both Mr. Adondakis and Mr. Tortora testified that this information was significant because it indicated that gross margins would be materially lower than market expectations.  Mr. Adondakis received this inside information from Mr. Kuo at 10:59 a.m. on April 27, 2009, and within 7 minutes, wrote in an email to Mr. Chiasson that they should discuss NVIDIA when Mr. Chiasson was free, and explained just minutes later that Mr. Adondakis was "hearing gm coming in very light for the q." (GX 900).  On May 4, 2009, Mr. Adondakis received another check from Mr. Kuo after the "close of the quarter" (but before the earnings announcement on May 7, 2009), that confirmed that "April quarter GM [was] 30%." (GX 820). Mr. Adondakis relayed this information to Mr. Chiasson.  Mr. Adondakis also informed Mr. Chiasson that he was calling sell-side analysts to confirm where market expectations were for NVIDIA's gross margins.  (GX 928).  Indeed, the analysts Mr. Adondakis called expected gross margins to be higher than they in fact would be according to Mr. Kuo's inside source at NVIDIA. (GX 822).

Mr. Ganek's involvement in this series of events was as follows.  The day *after* Mr. Adonadkis provided Mr. Kuo's first "read" on gross margins to Mr. Chiasson, Mr. Chiasson wrote the following email, with the subject "NVDA," to Mr. Ganek (GX 907):

> Sammy thinks we will get a firmer read shortly
> I am going to give it a day or 2
> Prelim call is Street is 34/our check is 30 GM

On May 4, 2009 – the day of the subsequent "read" from Mr. Kuo – Mr. Alessi, who was apprised of Mr. Adondakis's sources, informed Mr. Ganek at 2:20 p.m. (in one of the disputed emails) that Mr. Chiasson was selling short NVIDIA stock (GX 927):

> Not sure if you have spoken with AC/Sam
> Sam's latest check thinks Gms will be light when they report on Thurs
> Assuming we will pro-rate equally

Approximately 20 minutes later, Mr. Ganek and Mr. Chiasson engaged in the following instant message exchange (GX 923):

> Mr. Ganek:     nvda?
> Mr. Chiasson:  starting to do a little here . . . gm call remains bad and bad
>                for this qtr and guide
>                calls so far we are doing this aft suggest people not prepared for what is
>                coming
>                In print and guide
>                versus our checks
>                . . .

The Honorable Richard J. Sullivan
December 4, 2012
Page 5

      Mr. Ganek:    Have gotten anything incremental to last weeks call?
      Mr. Chiasson: Yes

### III.    The Government Has Met Its Burden For Admissibility Of The Documents

      The chronologies set forth above demonstrate that Mr. Ganek was familiar with the timing of Mr. Adondakis's "updates" on Dell and NVIDIA, and familiar with what that information was, namely that it was specific gross margin (and also revenue) information for Dell and NVIDIA's consolidated results. The inference that Mr. Ganek knew or consciously avoided knowing that the information was from sources within the company can be drawn from the following circumstances: (1) the timing of the updates – with multiple updates before the companies announced their earnings (which is inconsistent with some kind or "fundamental" or "bottoms up" analysis); (2) the nature of the information provided, namely top-line earnings numbers that sophisticated market professionals know are not publicly available in advance of an earnings announcement; (3) the absence of any analysis regarding so-called "macro" events or other reasons for trading in the stocks other than the specific numbers discussed in the electronic exchanges above; and (4) the level of detail about which Mr. Ganek is apprised as to Mr. Adondakis's "checks" on the companies (such as the timing of the checks and whether Mr. Adondakis was checking with sell-side analysts to compare the inside information with market expectations). For the foregoing reasons, the Court should admit Government Exhibits 438 and 927.

      Respectfully submitted,

      PREET BHARARA
      United States Attorney
      Southern District of New York


      By:_____
      Antonia M. Apps
      Richard C. Tarlowe
      John T. Zach
      Assistant United States Attorneys
      (212) 637-2198/2330/2410


cc:    Reid H. Weingarten, Esq. and Gregory Morvillo, Esq. (Counsel for Anthony Chiasson)
       Stephen Fishbein, Esq. and John A. Nathanson, Esq. (Counsel for Todd Newman)