UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>  v.<br><br>TODD NEWMAN,<br><br>   Defendant. | 12-CR-121 (RJS) |

## DECLARATION OF VICKRAM P. DAVID

**I, VICKRAM P. DAVID, hereby declare as follows:**

I declare under penalty of perjury that the foregoing is true and correct.

1. Since 2007, I have served as the head and/or director of investor relations at Diamondback Capital Management ("Diamondback"), an investment adviser to certain hedge funds. My principal responsibilities include communicating with investors, including raising assets and responding to investor concerns. I interact daily with investors in the funds Diamondback manages. I submit this affidavit in support of Diamondback's request for restitution.

2. I understand questions have been raised about the reasons investors withdrew approximately $1.3 billion from Diamondback on March 31, 2011. Based on my regular communications with investors at that time, it is clear to me that the withdrawals were entirely driven by the dramatic events of November 22, 2010.

3. Prior to that date, Diamondback was growing rapidly, returns were good, existing investors were pleased, and our assets under management were at an all-time high. We believed at the time there was a reasonable prospect of growing assets under management as high as $8 billion in the near term.

4. On November 22, 2010, the Federal Bureau of Investigation executed a search warrant at Diamondback. The warrant focused on portfolio manager Todd Newman. He was placed on leave immediately. We quickly notified all investors.

5. Investor reaction was immediate. Over the week following the search, I spoke to nearly all of our investors. Uniformly, they expressed enormous

concern at the suggestion in the search warrant (and in related press stories) that Newman had engaged in insider trading.

6. Many investors immediately requested their money back, although the next opportunity for most investors to redeem was not until March 31, 2011 and notices for that redemption were not due until February 15, 2011. There was enormous investor sensitivity to insider trading, and multiple investors made clear that they could not be associated with a fund under investigation for it.

7. Over the ensuing weeks, we made clear to investors that the firm was not a target of the investigation, was cooperating with the government, and that the warrant was focused only on Newman and a former analyst who had worked for him. We also assured investors that they would not bear the legal costs of the inquiry, we agreed to reduce our management fee, and we established appropriate escrows to provide investors with further comfort. Nonetheless, at the next redemption opportunity (February 15, 2011), investors demanded the return of approximately $1.3 billion – approximately 30% of the assets under management.

Executed on April 26, 2013
New York, New York

*[signature]*

VICKRAM P. DAVID